# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DAVID M. BERNARD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:10-CV-02-NKL ) |
| DANIEL D. ENGARDIO, and STATE FARM MUT. AUTO. INS. CO. | ) ) ) |
| Defendants. | ) ) ) |

## ORDER

Before the Court are the Motion for Summary Judgment [Doc. # 67] and Motion for Partial Summary Judgment [Doc. # 39] filed by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Also pending is State Farms' Motion to Strike [Doc. #36]. For the following reasons, the Court denies the Motion for Summary Judgment and denies the Motion for Partial Summary Judgment. It also denies the Motion to Strike.

## I.    Background[1]

Plaintiff David M. Bernard filed this lawsuit against Defendants Daniel D. Engardio and State Farm following a two-vehicle accident on June 28, 2008 in Wyandotte County, Kansas. Plaintiff Bernard filed a three-count Petition in Missouri state court, which State Farm removed to this Court. [Doc. # 1.] Count I of Plaintiff's Petition asserts a claim

---

[1] The Court has considered the parties' statements of undisputed fact which are supported by evidence. In considering each party's motion, the Court has drawn all inferences in favor of the non-movant.

against Defendant Engardio for personal injuries arising out of the accident. Count II asserts a breach of contract claim against State Farm for uninsured motorist insurance benefits. Count III asserts a claim against State Farm for vexatious refusal to pay those benefits. [Doc. # 1, Ex. 2.]

On June 28, 2008, Plaintiff Bernard was operating a Jeep northbound on Interstate 435 in Wyandotte County, Kansas. Defendant Engardio was operating a Mercury northbound on the entrance ramp to Interstate 435 from westbound Interstate 70. Plaintiff changed lanes, and the Mercury driven by Defendant Engardio collided with the rear of Plaintiff's Jeep. Plaintiff Bernard maintains that Defendant Engardio was at fault, while Defendant State Farm decided that Bernard and Engardio were equally at fault.

> According to Plaintiff's deposition testimony:
>
> A. I was looking ahead to see if the exit was closed off because of the cones, and I saw up ahead that it was not, so that's when I moved into that lane to get off on the exit and that's when the impact occurred, shortly after I pulled into that lane.
> Q. Now, when you said you moved into that lane, did you have to go like between the cones to get into that lane?
> A. As I recall, yes. There was an opening in the cones. I saw that the exit lane was apparently open. That's when I signaled and I turned into that lane.
> . . .
> Q. Now, you said you did look into the mirrors. Did you actually look over your shoulder or did you just look in the mirrors?
> A. No, just glanced in the mirror.
> Q. As you are making that lane change, were you speeding up, slowing down or maintaining your speed?
> A. Slowing down.

2

[Doc. # 40, Ex. C at 43-44.] An independent witness to the accident, Cheryl Alexander, stated that she did not see any signal from Plaintiff's Jeep. [Doc. # 49, Ex. E at 4.] Defendant Engardio also claims to have seen no signal from the Jeep.

Defendant Engardio's written statement admitted that his "rear brakes hardly work." *Id.* at 3. Plaintiff asserts that "Defendant Engardio left skid marks before and after the point of impact with Plaintiff's vehicle." [Doc. # 49 at 6.] There is also evidence that Defendant Engardio was speeding. [Doc. # 49, Ex. 1.]

Plaintiff Bernard's attorney represented to Defendant State Farm that Plaintiff's medical damages totaled $24,243.46 and his lost income was $1,890 for a total special damages valuation of $26,133.46. State Farm reviewed Plaintiff's medical records and considered comments from Plaintiff's physicians, including that Plaintiff reported he was "95% better" and that he had "little to no ongoing back pain." [Doc. # 40, Ex. E.] State Farm tendered to Plaintiff $18,496 for uninsured motorist benefits as a result of the accident prior to Plaintiff filing this suit. However, Plaintiff's Petition states: "As a direct result of the negligent acts on the part of the operator of the uninsured motor vehicle, plaintiff has sustained damages of $200,000.00." [Doc. # 1, Ex. 2 at 4.] Plaintiff now prays for a judgment in his favor in the amount of $181,504.00. *Id.*

Plaintiff Bernard's automobile policies, # 533 7003-F06-25E and # 53 6278-F19-25B provide the following definition for "Uninsured Motor Vehicle - Coverage U":

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury

must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

[Doc. # 69, Ex. A at 27.] "Uninsured Motor Vehicle" is defined as:

1. a land motor vehicle, the ownership, maintenance or use of which is:
    a. not insured or bonded for bodily injury liability at the time of the accident; or
    b. insured or bonded for bodily injury liability at the time of the accident; but
        (1) the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged; or
        (2) the insuring company denies coverage or is or becomes insolvent . . . .

*Id.*

At the time of the accident, Defendant Engardio was operating a vehicle owned by his fiancée's mother, Sally Bialek. At that time, Defendant Daniel Engardio was residing with his adoptive father, John Engardio, who had an automobile insurance policy with American Family Mutual Insurance Company ("American Family").

John Engardio's insurance policy provided liability coverage as follows: "We will pay damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer." [Doc. # 69, Ex. D at 4.] John Engardio's insurance policy defined "insured person" as "You or a relative." *Id.* "Relative" is defined as "a person living in your household, related to you by blood, marriage or adoption. . . ." *Id.* John Engardio's insurance policy with American Family also contained the following exclusion:

This coverage does not apply to:

4

> . . . .
> 9. Bodily injury or property damage arising out of the use of any vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or a relative.

*Id.* at 5.

Defendant Daniel Engardio had been borrowing Bialek's vehicle for a few days when the accident occurred. Defendant Engardio had participated in three rebuilds of the rear axle of the vehicle.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

B.  **Whether Defendant Engardio was Insured as a Matter of Law**

Defendant State Farm's Motion for Summary Judgment [Doc. # 67] argues that "Defendant Engardio was not, in fact, uninsured. Therefore, Plaintiff's claims against State Farm fail as a matter of law." [Doc. # 69 at 4-5.] State Farm's argument hinges on its assertion that: "The car being used by Defendant Daniel Engardio at the time of the accident was on temporary loan to him from his fiancée's mother, and therefore the exclusion for use of a vehicle 'furnished or available for regular use' would not apply to limit or preclude coverage." *Id.* at 5. However, Plaintiff Bernard asserts that "Defendant Engardio was a regular user of the motor vehicle in question as he had re-built the rear axle three times . . . ." [Doc. # 73 at 5.]

As Defendant State Farm's argument suggests, the relevant question is not whether Defendant Engardio was a regular user of the vehicle he drove at the time of the accident, but whether that vehicle was "furnished or available for regular use" by Engardio. [Doc. # 69, Ex. D at 5.] If the vehicle was furnished or available for regular use by Engardio, then he was excluded from his father's American Family policy; if the vehicle was not furnished or available for regular use by Engardio, then this exclusion does not apply.

The evidence cited by the parties indicates only that Defendant Engardio had been borrowing Bialek's vehicle for a few days and had previously participated in three rebuilds of its rear axle. As the record stands, a reasonable juror could conclude either that the

6

vehicle was or was not furnished or available for regular use by Defendant Engardio. Because this is a genuine issue of material fact, the Court must deny State Farm's Motion for Summary Judgment [Doc. # 67].

### C. Whether there is Sufficient Evidence of Vexatious Refusal of Benefits

Defendant State Farm has also filed a Motion for Partial Summary Judgment [Doc. # 39]. There, State Farm argues that Plaintiff's Count III for vexatious refusal must fail as a matter of law: "State Farm cannot be said to have acted without reasonable cause when determining to pay plaintiff more than half of his medical specials even after determining he was approximately 50% at fault for the accident." [Doc. # 40 at 8-9.]

Section 375.420 provides:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile . . . insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Mo. Rev. Stat. § 375.420. "[T]he general rule is that the vexatious conduct must be before the suit is filed." *Howard v. Aetna Life Ins. Co.*, 164 S.W.2d 360, 366 (Mo. 1942).

"When there is an open question of law or fact the insurer may insist upon a judicial determination of those questions without being penalized." *Oliver v. Cameron Mut. Ins. Co.*, 866 S.W.2d 865 (Mo. Ct. App. 1993) (citation omitted). "However, the existence of a

7

litigable issue will not necessarily preclude a penalty for vexatious delay if there is evidence that the insurer's attitude was vexatious and recalcitrant." *Id.* (citation omitted).

Defendant State Farm cites to a case from 1961:

> An insurance company has a right to entertain an honest difference of opinion as to its liability, and, so long as it acts in good faith in contesting either an issue of fact or law, it will not subject itself to the penalty of the statute. . . . It is only when it persists in its refusal to pay the policy after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay.

*Rohlfing v. State Farm Fire & Cas. Co.*, 349 S.W.2d 472, 477 (Mo. Ct. App. 1961) (quoting *Ireland v. Mfrs. & Merchs. Indem. Co.*, 298 S.W.2d 529, 534 (Mo. Ct. App. 1957)). However, in 1984, the Missouri Supreme Court wrote:

> The existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant. Direct and specific evidence to show vexatious refusal is not required[;] the jury may find vexatious [delay] upon a general survey and consideration of the whole testimony and all the facts and circumstances in connection with the case.

*DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984) (citations omitted). "This language from *Dewitt* has been characterized as having relaxed the standard necessary to support a vexatiousness award." *Russell v. Farmers & Merchs. Ins. Co.*, 834 S.W.2d 209, 221 (Mo. Ct. App. 1992) (citations omitted).

While there is a dispute of fact concerning fault in this case, there is also a substantial dispute of fact about the reasonableness of State Farm's decision to assess fault at 50/50 thereby avoiding any responsibility under its policy. The Plaintiff is a former police officer and his background would be a relevant consideration in weighing his testimony concerning

8

the use of the signal, yet State Farm decided to conclude that there was no signal based on the statement of the Defendant Engardio and an independent witness. However, the independent witness and Engardio did not say that Bernard failed to signal. They said that they did not see a signal. More importantly, there is no evidence before the Court that signaling would have any impact on the outcome of this accident, given the angle at which Engardio was approaching the highway. Even if Plaintiff Bernard were negligent for failing to signal, if that negligence did not cause the accident then there would be no basis for assessing any of the fault to Plaintiff Bernard, much less half of it. And State Farm did not attempt to verify whether a signal would in fact have prevented the accident. There is nothing in the record before the Court that indicates that State Farm considered this issue before making its 50/50 assessment of fault.

In addition, Engardio admitted he hardly had any rear brakes and he was speeding at the time of the collision. State Farm conducted no independent investigation to determine how Engardio's speed and inability to brake contributed to the accident. If with adequate brakes Engardio could have stopped in time to avoid the collision, then a jury might find it unreasonable for State Farm to assess only 50 per cent of the fault to Engardio. Even a small difference in the assessment of fault would have a large impact under Kansas law but there is no evidence that State Farm ever considered something other than a 50/50 split.

The proposed testimony of Plaintiff's expert witness, attorney Walter Simpson, provides further support for the Court's conclusion that summary judgment should not be granted on Plaintiff's vexatious refusal to pay claim. Mr. Simpson is an experienced

attorney with substantial trial and mediation experience. He has been involved in settling insurance claims on a regular basis during his career. Such work necessarily entails evaluating the worth of a case based in part on the weight to be given to the evidence.

While State Farm argues that Mr. Simpson is only providing legal conclusions that would not be helpful to the jury, the Court disagrees. The reasonableness standard necessarily requires context and that is factual in nature. This is especially so in insurance tort claim disputes because it is an area foreign to most jurors. Mr. Simpson's testimony about the reasonableness of State Farm's assessment of fault and evaluation of damages is also factual not legal. As to the other defects in Mr. Simpson's testimony raised by State Farm, the Court concludes they go to the weight of the evidence and not to its admissibility.

While it is true that a reasonable jury might very well conclude that State Farm made a balanced analysis of the relative fault of Bernard and Engardio and therefore was justified in denying liability, it is also true that that is not the only conclusion that could logically be reached on this record. Reasonableness is an indeterminate standard that is historically resolved by jurors not judges. In fact, the Court has not found a Missouri case after *Dewitt* where the Missouri courts of appeal or the Missouri Supreme Court concluded as a matter of law that a vexatious refusal claim should not have been submitted to the jury.

## III. Conclusion

Accordingly, it is hereby ORDERED that Defendant State Farm's Motion for Summary Judgment [Doc. # 67] is DENIED and its Motion for Partial Summary Judgment [Doc. # 39] is DENIED. In addition the Court DENIES State Farm's Motion to Strike [Doc. #36].

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: January 13, 2011
Jefferson City, Missouri